**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

3:23-cv-00081-JM

September 20, 2024

Frank D Garrison IV
PACIFIC LEGAL FOUNDATION
Suite 1000
3100 Clarendon Boulevard
Arlington, VA  22201

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
Sep 20, 2024
Tammy H. Downs, Clerk
By: JohnHibbs D.C.
DEP CLERK

        RE:  23-2687  Bill Walmsley, et al v. FTC, et al

Dear Counsel:

        The court today issued an opinion in this case. Judgment in accordance with the opinion was also entered today.

        Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 45 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 45 day period for filing permitted by FRAP 40 may be denied as untimely.

                                Maureen W. Gornik
                                Acting Clerk of Court

NDG

Enclosure(s)

cc:     Joseph Forrest Busa
          Clerk, U.S. District Court, Eastern District of Arkansas
         Courtney Dixon
         Stephen Ehrlich
         Grant E. Fortson
         John Kerkhoff
         Honorable James M. Moody
         Joshua A. Newton
         Lide E. Paterno
         Adam Clay Reeves
         Sarah Sloan Reeves

John C. Roach
Paul Emmanuel Salamanca
Pratik A. Shah
Mark B. Stern
Alexander V. Sverdlov
Brett David Watson

   District Court/Agency Case Number(s):   3:23-cv-00081-JM

**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

September 20, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

        RE:  23-2687  Bill Walmsley, et al v. FTC, et al

Dear Sir or Madam:

        A published opinion was filed today in the above case.

        Counsel who presented argument on behalf of the appellant and appeared on the brief was Frank D Garrison, IV, of Arlington, VA. The following attorneys also appeared on the appellant brief;  Brett David Watson, of Searcy, AR., and Caleb Joseph Kruckenberg, formerly of Arlington, VA.

        Counsel who presented argument on behalf of the Federal Trade Commission appellees and appeared on the brief was Courtney Dixon, of Washington, DC. The following attorney also appeared on the brief of the Federal Trade Commission appellees: Mark B. Stern, of Washington, DC., and Joseph Forrest Busa, formerly of Washington, DC.

        Counsel who presented argument on behalf of the Horseracing Integrity and Safety Authority appellees and appeared on the brief was Pratik A. Shah, of Washington, DC.  The following attorneys also appeared on the brief of the Authority appellees: John C. Roach, of Lexington, KY., and Lide E. Paterno, of Washington, DC.

        The following attorneys appeared on the amicus brief of Senator Mitch McConnell and Representatives Andy Barr and Paul Tonko in support of the appellees;  Paul Emmanuel Salamanca, of Washington, DC.,  Sarah Sloan Reeves, of Lexington, KY., and Adam Clay Reeves, of Lexington, KY.

        The judge who heard the case in the district court was Honorable James M. Moody.

        If you have any questions concerning this case, please call this office.

                                Maureen W. Gornik
                                Acting Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):  3:23-cv-00081-JM

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2687

_____

Bill H. Walmsley; Jon Moss; Iowa Horsemen's Benevolent and Protective Association,

*Plaintiffs - Appellants*,

v.

Federal Trade Commission; Lina M. Khan, Chair, Federal Trade Commission; Rebecca Kelly Slaughter, Commissioner, Federal Trade Commission; Melissa Holyoak,[1] Commissioner, Federal Trade Commission; Alvaro Bedoya, Commissioner, Federal Trade Commission; Horseracing Integrity and Safety Authority; Charles Scheeler; Steve Beshear; Adolpho Birch; Leonard Coleman; Joseph De Francis; Ellen McClain; Susan Stover; Bill Thomason; D.G. Van Clief,

*Defendants - Appellees*.

------------------------------

Senator Mitch McConnell; Representative Andy Barr; Representative Paul Tonko,

*Amici on Behalf of Appellee(s)*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern

---

[1]Commissioner Holyoak is substituted for her predecessor under Federal Rule of Appellate Procedure 43(c).

———————————

Submitted: June 12, 2024
Filed: September 20, 2024

———————————

Before COLLOTON, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

———————————

COLLOTON, Chief Judge.

The Horseracing Integrity and Safety Act establishes a framework to regulate horseracing.  The Act authorizes the Horseracing Integrity and Safety Authority to make and enforce rules relating to horseracing, subject to oversight and control by the Federal Trade Commission.  Bill Walmsley, Jon Moss, and the Iowa Horsemen's Benevolent and Protective Association moved for a preliminary injunction against the enforcement of rules promulgated under the Act.  They raised several constitutional challenges to the Act.  The district court[2] denied the motion, and we affirm.

I.

In 2020, Congress enacted the Horseracing Integrity and Safety Act. Horseracing Integrity and Safety Act of 2020, Pub. L. No. 116-260, §§ 1201-11, 134 Stat. 1182, 3252-75 (codified as amended at 15 U.S.C. §§ 3051-60).  The Act authorizes the Horseracing Integrity and Safety Authority to promulgate rules regarding horseracing.  The Authority is a private, nonprofit corporation.  15 U.S.C. § 3052(a).  The federal government plays no role in the selection or removal of officers of the Authority.  *Id.* § 3052(b)-(d).

———————————

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

-2-

Under the Act, the Authority must submit to the Federal Trade Commission proposed rules and proposed modifications to rules. *Id.* § 3053(a). The Authority's rules cover eleven enumerated areas in the realm of horseracing, from track safety to anti-doping control. *Id.* The Commission must publish each proposed rule or modification submitted by the Authority, and provide an opportunity for public comment. *Id.* § 3053(b). Within sixty days of publication, the Commission must approve or disapprove of the proposed rule or modification. *Id.* § 3053(c)(1). The Commission must approve such rules or modifications if it finds that they are consistent with the relevant statute and the Commission's approved rules. *Id.* § 3053(c)(2).

The Authority also has enforcement and adjudicatory functions under the Act. The Authority's proposed rules may cover "a schedule of civil sanctions and violations" and "a process or procedures for disciplinary hearings." *Id.* § 3053(a)(9)-(10). All sanctions are subject to *de novo* review before an administrative law judge, and the Commission may also review the imposition of sanctions *de novo*. *Id.* § 3058(b)-(c). The Authority must develop "uniform procedures and rules" authorizing access to records and property of covered persons, "issuance and enforcement of subpoenas and subpoenas duces tecum," and "other investigatory powers." *Id.* § 3054(c)(1)(A). It may also commence civil actions against covered persons or racetracks to enjoin practices that violate a statute or rule, to enforce civil sanctions, or to seek other relief. *Id.* § 3054(j).

In 2022, a court of appeals held that the Act's rulemaking structure was unconstitutional because the Authority's rulemaking power was an unconstitutional delegation of legislative power to a private entity. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black* (*NHBPA I*), 53 F.4th 869, 890 (5th Cir. 2022). Congress responded by amending § 3053(e). *Consolidated Appropriations Act, 2023*, Pub. L. 117-328, § 701, 136 Stat. 4459, 5231-32.

-3-

Section 3053(e) now provides:

> The Commission, by rule in accordance with section 553 of Title 5, may abrogate, add to, and modify the rules of the Authority promulgated in accordance with this chapter as the Commission finds necessary or appropriate to ensure the fair administration of the Authority, to conform the rules of the Authority to requirements of this chapter and applicable rules approved by the Commission, or otherwise in furtherance of the purposes of this chapter.

Walmsley and the other plaintiffs are involved in horseracing and subject to the rules of the Authority. They sued the Commission and the Authority, as well as their commissioners and board members, to enjoin the enforcement of the Act and rules issued under the Act, and to seek a judgment declaring the Act unconstitutional. The plaintiffs moved for a preliminary injunction to enjoin the rules promulgated under the Act. The district court denied the motion on the ground that the plaintiffs were unlikely to succeed on the merits. The plaintiffs appeal; we will refer to them collectively as "Walmsley."

## II.

In reviewing a request for a preliminary injunction, we consider the threat of irreparable harm to the movant, the probability that the movant will succeed on the merits, the balance between the harm to the movant and injury that an injunction would inflict on other parties, and the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). We will assume for the sake of analysis that Walmsley need only show a fair chance of success on the merits to satisfy that element of the analysis. *Cf. Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc); *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040-41 (8th Cir. 2016). Because Walmsley raises a facial challenge to the Act, he must show a fair chance

-4-

that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  To defeat a facial challenge, the government need only demonstrate that the Act is constitutional in some of its applications.  *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024).

Walmsley contends that the Authority's rulemaking power violates the private nondelegation doctrine.  Congress may not delegate its legislative power to a private entity.  *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537 (1935).  Where a private entity is subordinate to a governmental body, however, Congress may assign certain tasks to the entity.  *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 397-99 (1940); *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023), *cert. denied*, No. 23-402, 2024 WL 3089535, at *1 (U.S. June 24, 2024).

We agree with the Sixth and Fifth Circuits that the Act's rulemaking structure does not violate the private nondelegation doctrine.  Section 3053(e) as amended gives the Commission "ultimate discretion over the content of the rules that govern the horseracing industry." *Oklahoma*, 62 F.4th at 230.  If the Commission disagrees with policies reflected in the Authority's rules, then the Commission may change them under its power to "abrogate, add to, and modify" the rules.  *Nat'l Horsemen's Benevolent & Prot. Ass'n v. Black* (*NHBPA II*), 107 F.4th 415, 424 (5th Cir. 2024); 15 U.S.C. § 3053(e).  As such, the statute "makes the FTC the primary rule-maker, and leaves the Authority as the secondary, the inferior, the subordinate one." *Oklahoma*, 62 F.4th at 230.

Walmsley disputes this conclusion on the view that the Commission's authority is narrower.  He maintains that the Commission's power to "add to" the rules of the Authority allows only additions to existing rules and does not allow for the addition of a new rule.  The Act provides separately, however, for the Commission to "modify" existing rules.  Context and the canon against surplusage indicate that the phrase "add to" gives the Commission a greater degree of authority.  *See Bailey v.*

-5-

*United States*, 516 U.S. 137, 145-46 (1995).  The power to "add to . . . the rules of the Authority" thus enables the Commission to adopt new rules.  *See Oklahoma*, 62 F.4th at 227.  As long as the Commission has the final say over the rules, there is no impermissible private delegation.  *Adkins*, 310 U.S. at 399; *NHBPA II*, 107 F.4th at 425.

Walmsley contends that even if the Commission has power to add to the rules of the Authority, the Commission cannot do so within the sixty days allowed to consider a proposed rule promulgated by the Authority.  In other words, he maintains that there inevitably will be a gap between the time when a proposed rule of the Authority takes effect and when the Commission is able to modify or add to the rule after allowing for notice and public comment.  This timing argument fails because the Commission may use its power to postpone the effective date of a proposed rule or to delay the effective date of a rule.  *See NHBPA II,* 107 F.4th at 425; *Oklahoma*, 62 F.4th at 232.

Walmsley also objects that the Authority's ability to expand its jurisdiction over other breeds of horses is not subordinate to the Commission.  A state racing commission or breed-governing organization for non-thoroughbred horses may apply to be covered under the Act, subject to the Authority's approval.  15 U.S.C. § 3054(*l*).  We reject Walmsley's contention because the Commission's power under § 3053(e) allows it to "revoke the Authority's decision or place procedural and substantive conditions on any such decision."  *Oklahoma*, 62 F.4th at 232-33.

As others have recognized, Congress modeled the Act as amended on a regulatory scheme in the securities industry that has been widely approved as constitutional.  *See id.* at 229 (collecting cases).  We join the other two circuits in concluding that the Authority is subordinate to the Commission such that the rulemaking structure of the Act does not violate the private nondelegation doctrine.  *See NHBPA II*, 107 F.4th at 426; *Oklahoma*, 62 F.4th at 229-31.

-6-

III.

Walmsley also challenges the Authority's enforcement powers. He contends that the Act unconstitutionally delegates executive power to the Authority, a private entity. The statute provides that the Authority will have subpoena and investigative authority with respect to civil violations committed under its jurisdiction, and that it may commence a civil action against a covered person or racetrack that is violating the statute or rules. 15 U.S.C. § 3054(h), (j).

The Commission asserts that Walmsley lacks standing to challenge the enforcement power of the Authority. Walmsley challenges the rule on its face; he does not dispute a particular enforcement action. He has a cognizable injury as a covered entity subject to the rules of the Authority, *see* 15 U.S.C. § 3054(c)-(f), and we typically do not require regulated parties to violate a rule before they may challenge the rule's facial validity. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010). We thus conclude that Walmsley has standing to litigate whether the statute on its face impermissibly grants enforcement power to a private entity. *See NHBPA II*, 107 F.4th at 426-27; *Oklahoma*, 62 F.4th at 231 (addressing the merits of the claim).

Our two sister circuits reached differing conclusions on the constitutional question. We agree with the Sixth Circuit that the statute is not unconstitutional on its face because the Commission's rulemaking and revision power gives it "pervasive oversight and control of the Authority's enforcement activities." *Oklahoma*, 62 F.4th at 231 (internal quotation omitted). The Commission may, for example, "issue rules protecting covered persons from overbroad subpoenas or onerous searches." *Id.* The Commission may choose to create rules that require the Authority to obtain the Commission's approval before the Authority acts to commence a civil action under § 3054(j). *Id.* The Commission has power to review the Authority's enforcement actions and to reverse them. 15 U.S.C. § 3058(c). In evaluating a facial challenge,

-7-

we must consider circumstances in which the statute is most likely to be constitutional, not hypothetical scenarios in which the statutory scheme might raise constitutional concerns. *Rahimi*, 144 S. Ct. at 1903. Because the Commission has broad power to subordinate the Authority's enforcement activities, the statute is not unconstitutional in all of its applications.

The Fifth Circuit declared the enforcement provisions of the statute unconstitutional because it thought the Commission's power to modify and add to the rules of the Authority does not "authorize basic and fundamental changes in the scheme designed by Congress." *NHBPA II*, 107 F.4th at 432 (quoting *Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023)). In the *Biden* case on student loan forgiveness, however, the Supreme Court decided that the Secretary of Education exceeded her limited authority to "modify" certain statutory provisions because she "abolished" those provisions and "supplanted them with a new regime entirely." 143 S. Ct. at 2369. The decision turned significantly on the Court's conclusion that the term "'modify' carries 'a connotation of increment or limitation,' and must be read to mean 'to change moderately or in minor fashion.'" *Id.* at 2368 (internal quotations omitted).

By contrast, Congress here gave the Commission greater authority to "add to" existing rules of the Authority, not merely to "modify" them. To subordinate the Authority's enforcement activity, moreover, the Commission need only work within the structure of the Act as designed, not create a new statutory regime. In considering this facial challenge, we should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 864 (1989). Like the Sixth Circuit, we are satisfied that the statute's enforcement provisions are not unconstitutional on their face and in all of their applications.

IV.

Walmsley next argues that the Act violates the public nondelegation doctrine. Congress may not delegate the legislative power of Article I to a federal agency, but those who act under general provisions of a law may "fill up the details." *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825). When Congress sets forth "an intelligible principle to guide the delegee's use of discretion," there is no unconstitutional delegation. *Gundy v. United States*, 588 U.S. 128, 135 (2019).

The Act provides an intelligible principle for the Commission to follow as it seeks to ensure fair administration of the Authority, conform rules to the requirements of the statute, and further the purposes of the statute. *See* 15 U.S.C. § 3053(e). Congress gave the Commission jurisdiction to exercise authority over "the safety, welfare, and integrity of covered horses, covered persons, and covered horseraces," *id.* § 3054(a)(2), by developing rules for anti-doping, racetrack safety, and discipline. The statute sets baseline rules for anti-doping and enumerates several considerations for development of the program. *Id.* § 3055. Congress specified twelve elements that must be included in a horseracing safety program. *Id.* § 3056. Congress set forth several elements of rule violations and of a disciplinary process for the industry. *Id.* § 3057. These provisions meaningfully guide the Commission's exercise of discretion.

The Supreme Court has upheld delegations made with comparable or lesser guidance. In *American Power & Light Co. v. SEC*, 329 U.S. 90 (1946), the Court held that Congress permissibly "gave the Securities and Exchange Commission authority to modify the structure of holding company systems so as to ensure that they are not 'unduly or unnecessarily complicate[d]' and do not 'unfairly or inequitably distribute voting power among security holders.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (alteration in original) (quoting *Am. Power & Light Co.*, 329 U.S. at 104). Statutes authorizing regulation in the "public interest," when read

-9-

in light of statutory purposes and requirements, also have been held to include an "intelligible principle." *E.g.*, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943); *N.Y. Cent. Sec. Corp. v. United States*, 287 U.S. 12, 24-25 (1932). The provisions at issue here likewise pass muster.

## V.

Finally, Walmsley asserts that the Act violates the Appointments Clause of the Constitution because the members of the Authority's board of directors are allegedly officers of the United States who must be appointed by the President, a court of law, or the head of a department. *See* U.S. Const. art. II, § 2, cl. 2. Under the statute, the Authority selects its own board members. 15 U.S.C. § 3052(d)(1)(c), (d)(3).

We agree with the Fifth Circuit that the Act does not conflict with the Appointments Clause. The requirements of the Clause apply only to officers of the United States. *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 590 U.S. 448, 459 (2020). Walmsley relies on *Lucia v. SEC*, 585 U.S. 237 (2018), where the Supreme Court held that administrative law judges of the Securities and Exchange Commission were appointed improperly. Once the Court determined that the officials exercised "significant authority" under federal law, there was no doubt that these career appointees of a federal agency were officers of the United States. *Id.* at 251.

The Authority, however, is a "private, independent, self-regulatory, nonprofit corporation." 15 U.S.C. § 3052(a). A private corporation must be regarded as a governmental entity for constitutional purposes only in limited circumstances: where "the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 400 (1995); *see Dep't of Transp. v. Ass'n of Am. R.R.s*, 575 U.S. 43, 54-56 (2015). The *Lebron*

-10-

standard is not satisfied here.  The Act did not create the Authority; the Authority incorporated under Delaware law before the Act's passage.  *NHBPA II*, 107 F.4th at 438.  None of the board members are public officials, and the government plays no role in selecting or retaining them.  15 U.S.C. § 3052(b)-(d).  The members of the Board are thus not officers of the United States, so their appointments are not governed by the Appointments Clause.

*     *     *

Walmsley has not established a fair chance of success on the merits, so the district court did not abuse its discretion in denying the motion for a preliminary injunction.  The order of the district court is affirmed.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I concur in Parts II, IV, and V of the court's opinion.  However, I respectfully dissent with respect to Part III, which addresses the enforcement provisions of the Horseracing Integrity and Safety Act of 2020 ("HISA").

HISA empowers the Horseracing Integrity and Safety Authority ("Authority"), a private corporation, with "developing and implementing a horseracing anti-doping and medication control program and a racetrack safety program" for horseracing nationwide.  15 U.S.C. §§ 3051, 3052(a).  Both the Fifth and Sixth Circuits considered whether HISA's enforcement provisions facially violate the private nondelegation doctrine.  *See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415 (5th Cir. 2024); *Oklahoma v. United States*, 62 F.4th 221 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2679 (2024).  The court agrees with the Sixth Circuit, holding that HISA's enforcement provisions do not facially violate the private nondelegation doctrine because the Federal Trade Commission ("FTC") could

-11-

purportedly enact rules that reign in the Authority's broad enforcement powers. *Ante*, at 7-8. In my view, the Fifth Circuit has the better of the argument.

I agree with the Fifth Circuit that the plain text of HISA creates a clear delegation of enforcement power between the FTC and the Authority, "each within the scope of their powers and responsibilities under this chapter." 15 U.S.C. § 3054(a); *see Black*, 107 F.4th at 431-33. HISA expressly provides that the Authority's "powers" include full investigatory authority, 15 U.S.C. § 3054(h), and the ability to bring suit against alleged violators for injunctive relief, *id.* § 3054(j). Therefore, by the plain text of the statute, the FTC cannot impede upon the power granted to the Authority, nor can the FTC compel Authority enforcement action. In this fashion, the Authority does not "function subordinately" to an agency with "authority and surveillance" over it, in violation of the private nondelegation doctrine. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940).

The Fifth Circuit also correctly rejected the Authority's attempt to justify the constitutionality of HISA by analogizing its enforcement role to the role of self-regulatory organizations like the Financial Industry Regulatory Authority ("FINRA"). *See Black*, 107 F.4th at 433-35. FINRA is a private entity that assists the Securities and Exchange Commission ("SEC") in enforcing securities laws. The relationship between the SEC and FINRA is governed by the Maloney Act, which has been widely approved as constitutional. *See Oklahoma*, 62 F.4th at 229 (collecting cases). The Authority points out that the Maloney Act provides that the SEC "may abrogate, add to, and delete from" the rules of FINRA, 15 U.S.C. § 78s(c), while HISA similarly provides that the FTC "may abrogate, add to, and modify the rules of the Authority," *id.* § 3053(e). Despite the inclusion of this single sentence in HISA, the FTC-Authority relationship materially differs from the relationship between the SEC and FINRA. *See Black*, 107 F.4th at 434-35. As the Fifth Circuit noted, the Maloney Act empowers the SEC with, among other things, investigatory authority, 15 U.S.C. § 78u(a)(1), the power to seek criminal sanctions, injunctive relief, or disgorgement,

-12-

*id.* § 78u(c), (d), and the ability to step in and enforce any written rule itself, *id.* § 78o(b)(4). *See Black*, 107 F.4th at 434-35. "HISA gives the FTC none of these tools." *Id.* at 434. Thus, even though Congress may have purportedly modeled HISA on a regulatory scheme in the securities industry that has been widely approved as constitutional, the inclusion of some similar language in HISA alone does not make the Authority's enforcement role identical or even substantially similar to the role of FINRA in the securities context.

The court's opinion today does not undermine the reasoning of the Fifth Circuit. The court takes issue with the Fifth Circuit's reliance on the student loan case of *Biden v. Nebraska*, 600 U.S. ----, 143 S. Ct. 2355 (2023), where the Supreme Court held that "statutory permission to 'modify' does not authorize 'basic and fundamental changes in the scheme' designed by Congress." *Id.* at 2368. The court points out that HISA grants the FTC the ability to "abrogate, add to, and modify the rules of the Authority," 15 U.S.C. § 3053(e), while the Higher Education Relief Opportunities for Students Act of 2003 ("HEROES Act") at issue in *Nebraska* granted the Secretary of Education the power to "waive or modify any statutory or regulatory provision applicable to the student financial assistance programs," 20 U.S.C. § 1098bb(a)(1). *Ante*, at 7-8. The language "add to," the court contends, allows the FTC to make basic and fundamental changes to the statute that the Secretary of Education could not make under the HEROES Act. *Ante*, at 7-8.

I do not agree with the court's attempt to distinguish *Nebraska* on this basis. In *Nebraska*, the Supreme Court considered whether mass student loan cancellation was authorized by the HEROES Act. Notably, the plain text of the HEROES Act gave the Secretary of Education the power to waive or modify *the statute* itself, as opposed to the plain text of HISA which allows the FTC to "abrogate, add to, and modify *the rules* of the Authority." 15 U.S.C. § 3053(e) (emphasis added). Even though the HEROES Act goes even further than HISA in allowing the Secretary of Education to waive or modify the statute itself, the Supreme Court rejected the

-13-

government's attempt to rewrite the statute.  *See Nebraska*, 143 S. Ct. at 2368-71. The Court stated: "However broad the meaning of 'waive or modify,' that language cannot authorize the kind of exhaustive rewriting of the statute that has taken place here."  *Id.* at 2371.  Just as the Court held that the language "waive or modify any statutory or regulatory provision" could not authorize the kind of exhaustive rewriting of the statute that had taken place in *Nebraska*, here, the language "abrogate, add to, and modify the rules of the Authority" cannot authorize the FTC to subordinate the Authority's enforcement role when that role has been expressly granted to the Authority by statute.  Allowing the FTC to do so would subvert the text of the statute as written.  The Fifth Circuit's reliance on *Nebraska* was therefore proper.

The court also asserts that, "[t]o subordinate the Authority's enforcement activity, . . . the [FTC] need only work within the structure of [HISA] as designed, not create a new statutory regime."  *Ante*, at 8.  But, as the Fifth Circuit noted at length in its well-reasoned opinion, the FTC cannot work within the structure of HISA as designed because the plain text of HISA empowers the Authority, and not the FTC, with broad enforcement power.  *See Black*, 107 F.4th at 433.  The FTC cannot rewrite the statutory scheme that Congress enacted.  *See id.*

In a case such as this, where Congress has avoided the limitations of the Appointments Clause by vesting in a private entity the wholesale power to regulate doping, medication, and safety issues in the horseracing industry nationwide, it is imperative that the private nondelegation doctrine carry force to prevent broad delegation of governmental powers to unsupervised private parties.  The court's opinion fails to reckon with the plain language of HISA, which grants to the Authority a broad enforcement power that is not subordinate to the FTC.  Like the Fifth Circuit, I conclude that HISA's enforcement provisions facially violate the private nondelegation doctrine.  I respectfully dissent from Part III of the court's opinion.

_____

-14-